[Civ. No. 2566. Fourth Appellate District.—March 7, 1941.]

RUTH P. INGALLS, Plaintiff and Appellant, v. H. H. BELL et al., Defendants and Appellants.

Brittan & Mack for Plaintiff and Appellant.

Alfred Siemon and Bennett Siemon for Defendants and Appellants.

GRIFFIN, J.—There are two appeals in this case. Defendants appeal from the judgment entered on the verdict of the jury and plaintiff appeals from an order granting defendants a new trial. Since each side is thus appealing, we will refer throughout this opinion to plaintiff and defendants in order to avoid confusion. The appeal from the order granting a new trial must be first considered, and the appeal from the judgment becomes important only in case the order granting a new trial is reversed. (*Jackson* v. *Dolan,* 202 Cal. 468 [261 Pac. 706]; *San Jose Safe Deposit Bank of Savings* v. *Bank of Madera,* 121 Cal. 543 [54 Pac. 85].)

Plaintiff's complaint, stripped of unnecessary *minutiae,* alleges: (1) that on or about March 28, 1932, plaintiff was the owner of a 6 per cent royalty interest in the minerals of certain lands; (2) that on said day she and the other owners of similar royalty interests in the minerals entered into an agreement for the sale of their interests in the minerals to defendants for $106,000, payable in installments from the proceeds of the sale of oil, with certain minimum payment requirements; (3) that thereafter defendants became desirous of assigning their rights under the contract to Shamrock Petroleum Corporation (hereinafter referred to as Shamrock) and of securing certain modifications; (4) that on March 6, 1933, an agreement and assignment was accordingly made. between plaintiff and her said co-owners on the one part and Shamrock on the other part, modifying

the contract of sale in certain respects, including a reduction in the purchase price, and providing that the entire amount of the purchase price should be paid on or before March 6, 1936; (5) that in consideration thereof defendants at the same time executed and delivered to plaintiff a separate agreement guaranteeing the payment by Shamrock to plaintiff, a copy of which is attached to the complaint; (6) that the sum of $3,688.80 had become due plaintiff from Shamrock and remained unpaid; (7) that Shamrock had refused to pay; and (8) that she was still the owner of the royalty and offered to convey on the condition that the balance of the purchase price be paid to her. The prayer was for the full amount remaining unpaid.

The obligations of Shamrock but not defendants under the sales contract as modified may be briefly stated as follows: (a) royalty holders agree to sell leasehold rights, and reserve the right to forfeit on breach or default; (b) Shamrock agrees to pay the stated price in installments. These installments matured prior to March 6, 1936. The agreement of March 28, 1932, provided: "13. Upon the full payment of the purchase price above provided for, the sellers agree to execute and deliver to the buyers, a good and sufficient assignment conveying all of their right, title and interest in and to said leasehold interest unto the said buyers."

Portions of the separate agreement of guaranty dated March 6, 1933, provided in part:

"Whereas, on the 28th day of March, 1932, Ruth P. Ingalls agreed to sell . . . a six per cent (6%) interest . . . of all oil, gas and other hydrocarbon substances developed . . . and whereas on said day H. H. Bell and Archie Mayes agreed to buy the interest of said Ruth P. Ingalls for an agreed consideration of $6,000, which was payable out of the production of oil from said premises. And Whereas, H. H. Bell and Archie Mayes are unable to continue with said contract and they are desirous of permitting the Shamrock . . . to purchase the same interests as were being purchased by the said H. H. Bell and Archie Mayes under and by virtue of said contract, but for a reduced price of $4,245.30, so far as Ruth P. Ingalls is concerned, and whereas, Ruth P. Ingalls is willing that said reduction be made providing that she have assurance on the part of H. H. Bell and Archie Mayes that she will receive the full purchase price of $4,245.30 for her interest in said property herein

mentioned . . . That H. H. Bell and Archie Mayes and each of them do hereby agree that . . . Ruth P. Ingalls shall receive a total consideration equalling $4,245.30 for her interests in and to said land and premises . . . that if and in the event the said Shamrock . . . shall for any reason violate any of the terms and conditions of said contract, a notice of such violation shall be given H. H. Bell and Archie Mayes. Then within a period of thirty (30) days the said H. H. Bell and Archie Mayes individually, jointly and severally . . . shall pay to the said Ruth P. Ingalls the balance remaining on account of the purchase price of her interest in said property; and hereby guarantee the faithful performance thereof in every respect. . . . It is understood and agreed that in all events Ruth P. Ingalls is to receive and will be paid a total consideration of $4,245.30 for her interest in said property, and payment thereof by H. H. Bell and Archie Mayes is hereby guaranteed in said amount . . . that if and in the event the said Shamrock . . . for any reason fail or neglect to perform any act or thing in the time or manner therein prescribed or in the event there might be a waiver of strict performance on the part of said Shamrock . . . that nevertheless, H. H. Bell and Archie Mayes agree to be bound by this contract, and pay the balance remaining for the purchase of said property this day sold or agreed to be sold by her to the said Shamrock . . . that if and in the event the said H. H. Bell and Archie Mayes pay the amount agreed to be paid by the Shamrock . . . then and in that event they shall be subrogated to the right, title and interest of the said Ruth P. Ingalls in and to said contract of purchase.''

The answer of defendants admitted the due execution of the agreements; admitted, by failure to deny, the allegation that '' . . . defendants have failed, neglected and refused to make any payments whatsoever under said agreement of March 6, 1933, or at all . . . there is now due, owing and unpaid on account of the purchase price of said contract on said property, the sum of Three thousand six hundred eighty-eight and 80/100 dollars ($3,688.80) as principal . . . That demand has been made on said defendants that they pay said sum, but they have neglected, failed and refused so to do . . . ''

The complaint further alleges that Shamrock Petroleum Corporation, prior to the filing of the complaint, and after

January 4, 1935, filed a petition for reorganization under the Bankruptcy Act of the United States and thereafter failed, neglected and refused to pay any sum or sums on said contract whatsoever.

The answer admits this fact but as an affirmative defense alleges that from March 6, 1933, to the time of the filing of the bankruptcy proceedings, plaintiff neglected ''to enforce the obligation of Shamrock . . . by legal proceedings or otherwise, or to forfeit or terminate the right or interest of Shamrock . . . to said property . . . individually and collectively consented to and acquiesced in a course of persistent and continuous and uninterrupted violation of its obligations by Shamrock . . . and neglected to present any claim or demand whatever in said bankruptcy proceeding . . . and that by failing to present her said claim the plaintiff lost and waived her security as well as the interest or rights in the property which she was obligated to sell to these defendants'', and is estopped from making any claim or demand against them.

A trial by jury was demanded by plaintiff. She offered in evidence the two contracts and read them to the jury. In view of the admissions in the answer no further material evidence was produced. Plaintiff rested. Defendant offered in evidence certain documentary evidence and rested. At plaintiff's request the case was reopened for the purpose of proving demand for payment. Considerable evidence was offered on the subject. Demand was clearly established. Plaintiff again rested. Defendants moved for a directed verdict, and argued that neither under the pleadings nor the evidence was it shown that an offer had been made by plaintiff to execute an assignment or make a tender of her leasehold interest before the action was instituted, and also challenged the right of a jury to pass upon the issues as presented. Plaintiff moved to amend the complaint by showing that she now ''offers to convey to the person entitled thereto, upon the payment to said plaintiff of the sum hereinafter demanded in this complaint''. This amendment, as well as another amendment, was allowed over strenuous objection. Plaintiff again moved to reopen the case for the purpose of putting on proof in support of the amendments. Defendants objected again and asked the court for a continuance to meet the new issues presented. This continuance was denied. Plaintiff was then allowed to testify that she had

not, before the complaint was filed, made a tender of any assignment, but now offered to "turn it over" when the contract was paid. A dispute also arose as to whether plaintiff was at that time owner of the interest and was able to turn it over. Defendants offered to prove that plaintiff lost her ownership of the particular interest, which offer of proof was rejected. Defendants again moved, for the reasons stated, for a directed verdict, which was refused. The court then instructed the jury that if "for any reason said Shamrock . . . has failed to pay the plaintiff . . . any sum of money agreed to be paid by said corporation . . . as a result of the contract . . . and if the jury further believe that the plaintiff . . . within a reasonable time after the failure of the Shamrock . . . to pay Ruth P. Ingalls, . . . demanded the payment thereof from the defendants Bell and Mayes, and if the jury further believe that . . . Bell and Mayes have failed to pay said sum or sums not paid by the Shamrock . . . , then your verdict should be for the plaintiff . . . for such sums found to be due."

Defendants first complain because plaintiff was allowed, over objection, to reopen her case to prove demands not pleaded when there had been no defense on the ground that demand had not been made; that after plaintiff had rested her case the second time and after defendants had moved the court to instruct the jury to return a verdict for defendants, plaintiff, over the objection of defendants, was given permission to amend her complaint to allege an offer to convey upon the payment of the sum demanded in the complaint; that plaintiff was again allowed, over the objection of defendants, to reopen for further proof, and was permitted to prove that she had never conveyed her 6 per cent royalty interest; that by reason of such amendments and proof, the action became one for specific performance; that the court erroneously instructed the jury to the effect that plaintiff could recover from defendants without having tendered Shamrock a conveyance and without a demand on Shamrock for payment, thereby permitting the jury to pass on plaintiff's claim for the price without requiring the conveyance; that the liability of defendants under their contract of guaranty or suretyship, if any, was a liability to respond to the same extent as Shamrock was liable to respond to an action for specific performance, citing *Glock* v. *Howard &*

*Wilson Colony Co.,* 123 Cal. 1, 10 [55 Pac. 713, 69 Am. St. Rep. 17, 43 L. R. A. 199].

It is further argued that this is not an action for damages, as found by the verdict, because plaintiff is asking for the whole purchase price, and has alleged no facts from which the damages accruing to her under Civil Code, section 3307, could be ascertained; that in fact, it is not alleged that she has been damaged at all; and that where a party asks payment of the purchase price, it is held that the action is one in the nature of specific performance, citing *Smith* v. *Tristam,* 130 Cal. App. 750 [20 Pac. (2d) 770], *Ehrhart* v. *Mahony,* 170 Cal. 148 [148 Pac. 934]; *White* v. *Sage,* 149 Cal. 613 [87 Pac. 193]; that no party is entitled to specific performance unless he has performed, or can be compelled to perform (Civ. Code, sec. 3386); that specific performance cannot be enforced in favor of a party who has not fully and fairly performed all conditions precedent on his part (Civ. Code, sec. 3392); that where the title remains in the vendor, he has no cause of action for the purchase price (*Cuthill* v. *Peabody,* 19 Cal. App. 304, 308 [125 Pac. 926]); that whether defendants were guarantors or sureties, they were liable only when their principal Shamrock became liable, and defaulted; that a guarantor is liable only on default of the principal (Civ. Code, sec. 2807); that a surety is responsible for performance by the debtor (Civ. Code, sec. 2831 [repealed in 1939]; 24 Am. Jur., sec. 73, p. 922; *Brock* v. *A. G. Presiter, Inc.,* 17 Cal. App. (2d) 328 [61 Pac. (2d) 1183]; *Anderson* v. *Shaffer,* 98 Cal. App. 457, 462 [277 Pac. 185]); that a party seeking to compel the payment of the purchase price that has matured must offer to convey in order to mature the right to put the other party in default (Civ. Code, sec. 1439; *Fenn* v. *Pickwick Corp.,* 117 Cal. App. 236 [4 Pac. (2d) 215]; *McElwee* v. *Beckwith,* 198 Cal. 341, 345 [244 Pac. 1084]; *Lewis Publishing Co.* v. *Henderson,* 103 Cal. App. 425, 429 [284 Pac. 713]; *Kerr* v. *Reed,* 187 Cal. 409, 411 [202 Pac. 142]; *Booth* v. *Chapman,* 59 Cal. 149, 153; *Boone* v. *Templeman,* 158 Cal. 290, 297 [110 Pac. 947, 139 Am. St. Rep. 126]; *Sausalito Bay L. Co.* v. *Sausalito Imp. Co.,* 166 Cal. 302, 308 [136 Pac. 57]; *Hermosa Beach etc. Co.,* v. *Law Credit Co.,* 175 Cal. 493, at 495 [166 Pac. 22]; *Neher* v. *Kauffman,* 197 Cal. 674, at 681 [242 Pac. 713]; *Benedict* v. *Calkins,* 19 Cal. App. (2d) 416 [65 Pac. (2d) 831].)

The principal argument is that it is clear from the contract that defendants became liable *only* on default of Shamrock; that if the whole of the purchase price had accrued, there could be no default by Shamrock until a conveyance was offered to Shamrock and a demand made on Shamrock for the payment of the balance; that it was not necessary to offer a conveyance to defendants, as they had assigned their right to a conveyance; nor could Shamrock be placed in default by any such tender.

In reply plaintiff contends that it was not necessary for the plaintiff to allege and prove a tender of an assignment before commencing or as a condition to maintaining her suit against the defendants on their agreement. Plaintiff recognizes the general rule regarding tender of a deed by a seller as a concurrent condition of the right to maintain a suit against the buyer for the balance of the purchase price, citing *Glock* v. *Howard & Wilson Colony Co., supra;* 25 Cal. Jur., p. 659, sec. 146; but argues that the rule is not applicable here; that one of the accepted and well-established exceptions to the rule is that a tender is not required where it would be a useless act, citing 25 Cal. Jur., p. 661, sec. 147; *Hoppin* v. *Munsey,* 185 Cal. 678, 685 [198 Pac. 398]; *Dean* v. *Hawes,* 21 Cal. App. 350 [131 Pac. 885]; *Sausalito Bay L. Co.* v. *Sausalito Imp. Co., supra;* 66 C. J., p. 998, sec. 726; that, if tender to Shamrock was necessary, it was excused under the uncontradicted evidence in this case; that Shamrock was admittedly unable to pay; that in fact it was in bankruptcy reorganization during all of the latter period of the contract; that it had neglected to pay, in spite of considerable correspondence asking it to do so; that there was no attempt on the part of defendants to show Shamrock's ability to pay; that if they had sincerely believed that Shamrock could have responded to a tender they, after demand was served on them for payment, could have brought an action against Shamrock compelling it to pay Mrs. Ingalls upon receiving a deed or assignment, citing Civ. Code, sec. 2846; *Kreling* v. *Kreling,* 118 Cal. 413 [50 Pac. 546]; 23 Cal. Jur., p. 1072, sec. 59, et seq.; *Duerr* v. *Sloan,* 50 Cal. App. 512, 518 [195 Pac. 475]; 23 Cal. Jur., p. 1039, sec. 34; *Gaffigan* v. *Lawton,* 1 Cal. (2d) 722 [37 Pac. (2d) 79]; *Pacific M. & T. Co.* v. *Mass. Bonding etc. Co.,* 192 Cal. 278, 285 [219 Pac. 972]; *Blackwood* v. *McCallum,* 187 Cal. 655, 659 [203 Pac. 758]; that the rights of the defend-

ants were not affected by the lack of tender; that plaintiff's right to sue Bell and Mayes arose not as the result of enforcing the contract of purchase against Shamrock, but as a result of the new agreement with the former buyers; that the language of the contract itself obviates tender because it provides that *upon payment* by defendants, they shall have, by subrogation, the right, title and interest of plaintiff in said Shamrock contract, citing Civ. Code, secs. 2848, 2849; 23 Cal. Jur., p. 1078, sec. 64; *Ryland* v. *Commercial etc. Bank,* 127 Cal. 525 [59 Pac. 989]; *Schlitz* v. *Thomas,* 61 Cal. App. 635, 638 [216 Pac. 51]; that therefore the right to an assignment, either under the terms of the contract with plaintiff or under the general rules of subrogation applicable, did not arise in any event until the defendants actually paid Mrs. Ingalls; that their demand for an assignment as a concurrent condition could have been ignored by plaintiff, and therefore plaintiff was not compelled to make a tender to them of a deed before starting suit; that it is not a case of mutual and dependent covenants, citing 25 Cal. Jur., p. 598, sec. 108; and that the rule of *Glock* v. *Howard & Wilson Colony Co., supra,* does not apply where the covenants are not concurrent, citing *Cook* v. *Enright,* 134 Cal. 1 [66 Pac. 3], *Schwerin Estate Realty Co.* v. *Slye,* 173 Cal. 170 [159 Pac. 420], 25 Cal. Jur., p. 659, sec. 146, 66 C. J., p. 760, sec. 345, *Security-First National Bank* v. *Chapman,* 41 Cal. App. (2d) 219 [106 Pac. (2d) 431], and *Loeb* v. *Christie,* 6 Cal. (2d) 416 [57 Pac. (2d) 1303].

The legislature in 1939, abolished all distinction between sureties and guarantors (sec. 2787, Civ. Code) and a surety who has assumed liability for payment to a creditor is liable immediately upon the default of the principal and without demand or notice (sec. 2807, Civ. Code) and a surety may now, under section 2845 of the Civil Code, require his creditor to proceed against the principal, or to pursue any other remedy in his power which the surety cannot himself pursue, and which would lighten his burden; and if in such case the creditor neglects to do so the surety is exonerated to the extent to which he is thereby prejudiced. However, these sections were not effective until 1939, and are not applicable to plaintiff's rights acquired under its contract of guaranty dated March 6, 1933. (*Bennett* v. *Superior Court,* 5 Cal. App. (2d) 13 [42 Pac. (2d) 80].)

A proper determination of the questions here presented resolves itself into the legal interpretation to be given the instrument according to the law then in effect and upon which the cause of action was based, i. e., whether it was a contract of guaranty or of suretyship.

A guaranty, as defined by section 2787 of the Civil Code, then in effect, was "a promise to answer for the debt, default, or miscarriage of another person", which in effect was an undertaking or promise of one person to take upon himself the fulfillment of the obligation of another, in case such other person defaults in the performance thereof (*Lightstone* v. *Laurencel*, 4 Cal. 277), and was a collateral undertaking which could not exist without a main or substantive liability to which it was collateral (*Kilbride* v. *Moss*, 113 Cal. 432 [45 Pac. 812, 54 Am. St. Rep. 361]), and although the contract of guaranty was collateral to the contract of the principal debtor the two were distinct and independent. (*Cooke* v. *Mesmer*, 164 Cal. 332 [128 Pac. 917].) As long as the agreement established the intention of creating a contract of guaranty, no set words and form were required. Whether the promise was original or collateral was a question of fact for the jury, or in case the negotiations of the parties were incorporated into an unambiguous written contract, it was for the court to determine. (*Harris* v. *Frank*, 81 Cal. 280 [22 Pac. 856]; 6 Cal. Jur., sec. 193, p. 328 et seq.; 13 Cal. Jur., p. 87, sec. 3.) From the standpoint of legal significance, there was a great distinction between contracts of guaranty and of warranty. They were similar in that the purpose of both was to save one of the contracting parties from loss which the parties contemplated might happen, but a contract of warranty was a primary obligation, whereas a guaranty was collateral.

Cases often occurred in which it was difficult to determine in which category a given contract belonged. There were, however, certain characteristics which distinguished the two relations. Both a guarantor and a surety were bound for another person, but a surety was usually bound with his principal by the same instrument executed at the same time and on the same consideration, whereas, a guarantor was not (*Treweek* v. *Howard*, 105 Cal. 434 [39 Pac. 20]). A guaranty always assumed the presence of a guarantor who was personally liable, so if there was no personal liability a contract of suretyship and not of guaranty resulted. (*Sather*

*Banking Co.* v. *Arthur R. Briggs Co.*, 138 Cal. 724 [72 352].) One who by his pleadings admitted a contract to be one of guaranty could not later deny that fact and set up that his contract was one of suretyship. (*Adams* v. *Wallace,* 119 Cal. 67 [51 Pac. 14].) ■ There was, prior to the amendment of Civil Code, sections 2787 et seq., a marked difference between a contract of guaranty and one of indemnity. In a *guaranty* of payment the liability was fixed by the failure of the principal debtor to pay at maturity or at the time when payment was guaranteed. It was immaterial whether the debtor could or could not pay the debt (*Cunningham* v. *Norton,* 5 Cal. Unrep. 35 [40 Pac. 491]; *Adams* v. *Wallace, supra*).

In an *indemnity* against loss as the result of the non-payment of a debt, or for other loss, no liability accrued until after, by the use of due and reasonable diligence, there had been a failure to collect the debt from the principal debtor or the one indemnified had actually suffered loss against which the contract protected him. (*Ohio Electric Car Co.* v. *Le Sage,* 182 Cal. 450 [188 Pac. 982].) In either case, however, remedies against the principal debtor must, of course, have been exhausted where the parties so provided in their contract. (*Bouche* v. *Louttit,* 104 Cal. 230 [37 Pac. 902]; *Cooke* v. *Mesmer, supra.*) ■ Under section 2807 of the Civil Code then in effect, a guarantor of payment or of performance was liable to the guarantee immediately upon the default of the principal and without demand or notice. So there was no duty resting on the creditor to exhaust the remedies against the debtor, and mere delay or failure on the part of the creditor to proceed against the principal debtor did not exonerate the guarantor unless the contract of guaranty provided that such action must be taken (Civ. Code, sec. 2823; *San Francisco T. Seminary* v. *Monterey etc. Co.,* 179 Cal. 166 [175 Pac. 693]; *Cooke* v. *Mesmer, supra;* 13 Cal. Jur., sec. 22, p. 110). ■ A guarantor of an obligation is entitled to certain rights of subrogation as against the principal debtor, and may enforce any remedy which the creditor has against the principal debtor (*Clark* v. *Chapman,* 98 Cal. 110 [32 Pac. 812, 33 Pac. 750]), and it is not a condition precedent to recovery upon a guaranty that the creditor assign all his rights against the debtor over to the guarantor, and where the guarantor pays the principal

obligation he is entitled to reimbursement. (*Roush* v. *Kirk-man*, 42 Cal. App. 115 [183 Pac. 353].) A guarantor had no right to compel the creditor to avail himself of the remedies against the debtor unless he paid the obligation, in which case he could have compelled the creditor to act by a proceeding in equity. (*Whiting* v. *Clark*, 17 Cal. 407; 13 Cal. Jur., sec. 30, p. 122; *W. H. Marston Co.* v. *Kochritz*, 109 Cal. App. 331 [293 Pac. 120].) An action against a guarantor must be brought specially upon the contract of guaranty itself. (*San Francisco T. Seminary* v. *Monterey etc. Co.*, *supra.*) The action so brought is not for the collection of the principal debt, as such, and is in fact independent of any action upon the principal obligation. (*Adams* v. *Wallace, supra.*) The complaint must allege the execution of the guaranty and that the defendant has not paid the obligation. (*Roberts* v. *Treadwell,* 50 Cal. 520.)

Amendments to pleadings in this class of actions are allowed in accordance with general rules. (*Segaloff* v. *Furman*, 209 Cal. 301 [287 Pac. 92].) All material allegations of the complaint, on a guaranty not denied by answer, are deemed admitted and are not put in issue, and all admissions in the answer are binding on the defendant. (*Adams* v. *Wallace, supra.*)

Under these established principles of law, plaintiff's right to sue Bell and Mayes arose NOT as the result of enforcing the contract of purchase against Shamrock, but as the result of a new agreement of guaranty with them. If she had brought suit against Shamrock, and Shamrock had been asked to pay, then the rule of tender perhaps would have been applicable. (*Ross* v. *McDougal,* 31 Cal. App. (2d) 114 [87 Pac. (2d) 709].)

Guided by the general rules then in effect, we must conclude that the instrument in question was (1) an independent collateral contract for the direct payment of money; (2) it possessed all the elements of a contract of guaranty; and (3) it was not a contract of suretyship.

The evidence and pleadings clearly established the fact that notice of default and demand for payment was given, and under the cited cases no tender of the assignment or exhaustion of remedies against the principal at that time was necessary. (*California Bank* v. *Kenoyer*, 2 Cal. App. (2d) 367 [37 Pac. (2d) 836]; *Rice Securities Co.* v. *Daggs,*

63 Cal. App. 273 [218 Pac. 484]; *Union Collection Co.* v. *Rogers,* 18 Cal. App. 205 [122 Pac. 970]; *Birkhofer* v. *Krumm,* 4 Cal. App. (2d) 43 [40 Pac. (2d) 553]; *Somers* v. *U. S. Fidelity & Guaranty Co.,* 191 Cal. 542 [217 Pac. 746]; *Bank of America* v. *Granger,* 115 Cal. App. 210 [1 Pac. (2d) 479]; *Security-First National Bank* v. *Chapman, supra; Wilcoxon* v. *Stitt,* 65 Cal. 596 [4 Pac. 629, 52 Am. Rep. 310]; *Loeb* v. *Christie,* 6 Cal. (2d) 416 [57 Pac. (2d) 1303]; *Newton* v. *Hull,* 90 Cal. 487 [27 Pac. 429].)

█ A jury trial was authorized under section 592 of the Code of Civil Procedure. (*Platt* v. *Havens,* 119 Cal. 244 [51 Pac. 342].) Defendants contend that it was error for the court to permit the reopening of plaintiff's case to prove demand. If this were error, it did not constitute sufficient grounds for granting a new trial, because during the presentation of proof of demand after the case was reopened, defendants' counsel stated: "I will not raise a question about the demand, anyway". It cannot now be urged that the trial court was justified in granting a new trial because it erred in admitting testimony to prove a point which counsel admitted. (*Union Collection Co.* v. *Rogers, supra.*) █ The amendment of plaintiff's complaint to allege that she was the owner of the six per cent interest and was now offering to "turn it over" upon payment, was surplusage and may be disregarded. It was made in accordance with the court's opinion that tender was necessary, and may be similarly regarded as any other allegation which is not necessary to a plaintiff's cause of action. (*Kidwell* v. *General Petroleum Corp.,* 212 Cal. 720 [300 Pac. 1, 76 A. L. R. 830].)

It becomes immediately apparent from the record that the sole reason for the trial court being led into granting a new trial was that "it was not alleged that a tender had been made nor was it proved that a tender was made . . . (See *Newton* v. *Hull,* 90 Cal. 487 [27 Pac. 429].)" From the interpretation that must be given this instrument and for the reasons expressed, the cited case is not applicable and the court erroneously granted the motion for a new trial. The issue as presented to the jury was determined under proper instructions. Under the undisputed evidence the defendants were unquestionably liable. The amount claimed as due was undisputed. The judgment rendered on the verdict was proper and should be affirmed.

Therefore, the order granting the motion for new trial is reversed and the judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.

Defendants' and appellants' petition for a hearing by the Supreme Court was denied May 5, 1941.